IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IKIEM SMITH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-18-2836 |
| MARYLAND STATE POLICE DEPARTMENT, et al., | * | |
| | * | |
| Defendants. | | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Maryland State Police Department ("MPD"), Sergeant Sean Harris, Corporal Michael Cox, Trooper First Class Ryan Boyce, Trooper First Class James Pettit, and former Trooper First Class Justin Hohner's[1] (collectively, "Officer Defendants") Motion to Dismiss, or, in the Alternative, for Summary Judgment (ECF No. 11). Plaintiff Ikiem Smith, a self-represented Maryland prisoner, filed suit under 42 U.S.C. § 1983 (2018), alleging Defendants subjected him to an unlawful traffic stop and used excessive force against him during his arrest. The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant Defendants' Motion in part and deny it in part.

---

[1] Smith also named "K9 Max," the dog involved in his arrest, as a Defendant. The Complaint is dismissed as to K9 Max.

# I. BACKGROUND[2]

On February 16, 2017, around 10:15 p.m., Cox and Harris encountered Smith as he was driving southbound on Route 272 in North East, Maryland. (Compl. ¶ 8, ECF No. 1). On or before that date, Cox and Harris had been investigating Smith, and there was a felony warrant for Smith's arrest. (Cox Decl. ¶¶ 3–4, ECF No. 11-4; Harris Decl. ¶ 3, ECF No. 11-5; see Defs.' Reply Mot. Dismiss Fail. State Claim Alt. Mot. Summ. J. ["Defs.' Reply"] Ex. 1 ["Feb. 2, 2017 Arrest Warrant"], ECF No. 17-1). Cox and Harris, who were working undercover in plain clothes and driving an unmarked police car, (Compl. ¶ 9), turned on their lights and sirens, and Smith pulled over, (Cox Decl. ¶¶ 5–6; Harris Decl. ¶ 5).

Cox directed Smith to shut off his engine and exit the car. (Cox Decl. ¶ 6; Compl. ¶ 10). According to Smith, Cox and Harris would not answer Smith's questions regarding the reason for the stop. (Compl. ¶¶ 11–12). Smith failed to obey Cox's orders and instead restarted the engine. (Cox Decl. ¶ 7). Cox reached into the car to disengage the ignition, but Smith put the car in drive. (Id.). As Cox felt the car move forward, he "disengaged for fear of being dragged by the vehicle." (Id.). Smith then sped away. (Id.; Compl. ¶ 13).

Smith led Officer Defendants and other law enforcement officers on a high-speed chase for approximately three miles. (Id.; Cox Decl. ¶ 8; Harris Decl. ¶ 8; Pettit Decl. ¶ 7, ECF No. 11-6; Hohner Decl. ¶ 6, ECF No. 11-7; Boyce Decl. ¶¶ 7–8, ECF No. 11-8). Smith then abruptly pulled his car on to the shoulder of Interstate 95, causing Cox and

---

[2] Unless otherwise noted, the Court takes the following facts from Smith's Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

Harris to collide with other police vehicles involved in the pursuit. (Cox Decl. ¶ 9; Harris Decl. ¶ 9; Pettit Decl. ¶ 8; Hohner Decl. ¶ 7; Boyce Decl. ¶ 8). According to Cox and Harris, due to the collision, they were not present at the scene when other Officer Defendants extracted Smith from his vehicle and handcuffed him, or when the police dog bit Smith. (Cox Decl. ¶¶ 10–13; Harris Decl. ¶¶ 10–12).

After Smith pulled over, Pettit and Hohner, who were also involved in the chase, approached Smith's vehicle. (Compl. ¶ 14; Pettit Decl. ¶ 9; Hohner Decl. ¶¶ 7–8; Boyce Decl. ¶¶ 9–10). Pettit directed Smith to show his hands and to open his door slowly. (Pettit Decl. ¶ 9). Smith did not comply. (Id.). Another officer then used his baton to break the driver's side window of Smith's car. (Id.; Compl. ¶ 14). Once the window was broken, Pettit reached into the vehicle and attempted to remove Smith from the vehicle. (Pettit Decl. ¶ 10; Hohner Decl. ¶ 8; Compl. ¶ 14). Smith resisted and attempted to push Pettit away. (Pettit Decl. ¶ 10). Seeing the struggle between Pettit and Smith, Hohner then assisted Pettit in extracting Smith from the car. (Id.; Hohner Decl. ¶ 8).

After being removed from the car, Pettit and Hohner placed Smith face down on the ground. (Pettit Decl. ¶ 11; Hohner Decl. ¶ 9; Compl. ¶ 15). Pettit and Hohner put Smith in handcuffs, "scream[ed] profanities" at Smith, and searched his person, while Cox and Harris grabbed Smith's right leg, taking off Smith's right sneaker and sock. (Compl. ¶ 15). Smith alleges that Cox and Harris ordered Boyce, who was present at the scene with his K-9 police dog (the "K-9"), (Boyce Decl. ¶¶ 9–12), to command the K-9 to attack Smith, (Compl. ¶ 15). Smith asserts that Boyce then commanded the K-9 to attack and bite Smith's right foot, which was bare. (Id. ¶¶ 16–17).

3

As a result of the attack from the K-9, Smith suffered torn tendons, "ripped flesh," puncture wounds, nerve damage, swelling, and permanent impairment of the function of two toes. (Compl. ¶ 18). Smith also reports suffering severe mental anguish and emotional distress resulting from the incident. (Id. ¶ 19).

Smith was charged in the Circuit Court for Cecil County in two separate cases: C-07-CR-000230 and C-07-17-000945. (Defs.' Mot. Dismiss Fail. State Claim Alter. Mot. Summ. J. ["Defs.' Mot."] Ex. F ["C-07-CR-000230 Docket"], ECF No. 11-9; id. Ex. G ["C-07-CR-17-000945 Docket"], ECF No. 11-10). On June 15, 2018, Smith was found guilty of felony possession with intent to distribute. (C-07-CR-17-000945 Docket at 4–5). On June 27, 2018, after a bench trial, Smith was found guilty of the first-degree assault of Cox, second degree assault, resisting arrest, attempting to elude uniformed police by failing to stop, attempting to elude police in official vehicle by failing to stop, and reckless and negligent driving. (C-07-CR-000230 Docket at 5–7).

Testimony at Smith's criminal trial for case C-07-CR-000230 closely tracked the evidence produced by Defendants in this case. (See Defs.' Supp. Mot. Dismiss Fail. State Claim Alter. Mot. Summ. J. ["Supp."] Ex. 2 ["C-07-CR-000230 Bench Trial Tr."] at 2–6, ECF No. 19-2). After listening to the testimony and evidence, the trial judge concluded:

> The Court believes that at the time that Corporal Cox's body was in the vehicle, [Smith] had engaged the ignition, placed the vehicle in gear to allow the vehicle to move forward. The Court believes that but for the actions of Corporal Cox, if he had not been able to get out of the vehicle, that [Smith] would have driven off without Corporal Cox getting out of the vehicle. The Court believes that [Smith] did in fact attempt to cause serious physical injury to . . . Corporal Cox. . . .

> The Court is also convinced beyond a reasonable doubt and to a moral certainty that [Smith] assaulted in the second degree Corporal Cox. The testimony was that he elbowed him, struck at him at the first motor vehicle stop, and so this Court is convinced.
>
> . . .
>
> [Further,] the State has proven beyond reasonable doubt and to a moral certainty that Smith knew that a law enforcement officer was attempting to arrest him, that he refused to submit that arrest, and that that arrest was lawful. So the Court is convinced beyond a reasonable doubt and to moral certainty that he committed the offense of resisting arrest . . . .

C-07-CR-000230 Bench Trial Tr. at 6–7. Smith's convictions were later upheld by the Maryland Court of Special Appeals. (Supp. Ex. 1 ["Aug. 8, 2019 Court of Special Appeals Mem. Op."] at 5, ECF No. 19-1).

On September 12, 2018, Smith brought suit under 42 U.S.C. § 1983 against Defendants in their individual and official capacities, alleging that they subjected him to an unlawful traffic stop and used excessive force against him during his arrest in violation of the Fourth Amendment to the U.S. Constitution. (ECF No. 1).[3] Smith seeks compensatory and punitive damages. (Compl. ¶¶ 22–26). Smith filed a Supplemental to his Complaint on October 9, 2018. (ECF No. 4).

On February 1, 2019, Defendants filed a Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Motion for Summary Judgment. (ECF No. 11). Smith filed an Opposition to Defendants' Motion on February 26, 2019. (ECF No. 13). Defendants filed a Reply on April 2, 2019, (ECF No. 17), and Smith filed a Surreply on April 23,

---

[3] Smith, who is self-represented, erroneously identified the Eighth Amendment as one of the bases for his Complaint. Defendants correctly note that the Eighth Amendment does not apply in the context of an arrest. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). As such, to the extent Smith alleges claims under the Eighth Amendment, they are dismissed.

5

2019, (ECF No. 18). Defendants filed a Supplemental Argument in Support of their Motion on August 14, 2019. (ECF No. 19). Smith filed an Opposition to the Supplemental Argument on August 26, 2019. (ECF No. 22).

## II. DISCUSSION

### A. Conversion

Defendants style their Motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56, and attach A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom., Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). Pursuant to Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion. First, that the "parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and second, "that the parties first 'be afforded a reasonable opportunity for discovery.'" Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d)

may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). Rule 56(d) provides that the Court may deny or continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). "[T]he failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)).

Here, Smith filed what the Court will construe as the equivalent of a Rule 56(d) affidavit. With his Opposition, Smith filed an Exhibit List that included: "Exhibit E – Photographs of Smith's Injuries (Plaintiff Smith only can obtain these photographs of his injuries through discovery, they're in the possession of the Defendants"; and "Exhibit F – Video from Boyce's Patrol Vehicle (Plaintiff Smith can only obtain this video/audio of 2/16/2017 Vehicle Pursuit / use of force through discovery, they're in the possession of the Defendants." (Pl.'s Opp'n Defs.' Mot. Dismiss Alter. Mot. Summ J. ["Pl.'s Opp'n"] Ex. Cover Ltr. ["Exhibit List"], ECF No. 13-3). A few weeks later, he filed a Motion for Discovery, requesting similar materials. (Mot. Disc., ECF No. 16). As a result, the Court

7

will not convert Officer Defendants' Motion into one for summary judgment and will instead consider it under Rule 12(b)(6).

**B.     Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Pro se pleadings, however, are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010).

Generally, a court may not consider extrinsic evidence when ruling on a motion to dismiss pursuant to Rule 12(b)(6). Where, however, "a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc., 367 F.3d 212, 234 (4th Cir.2004) (citing Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir.1999)). An integral document is a document that by its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." Walker v. S.W.I.F.T. SCRL, 517 F.Supp.2d 801, 806 (E.D.Va. 2007). In addition to integral and authentic exhibits, on a 12(b)(6) motion the court "may properly take judicial notice of matters of public record." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

**C.    Analysis**

Defendants argue that Smith's Complaint fails to adequately state a claim against them, that his claims are barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994), and that Defendants are entitled to Eleventh Amendment immunity and qualified immunity. The Court considers these arguments in turn.

**1.    Failure to State a Claim**

Defendants argue that Smith has not alleged sufficient facts to state a Fourth Amendment claim with respect to the traffic stop. Smith counters that he has. The Court agrees with Smith.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment." United States v. Sowards, 690 F.3d 583, 587–88 (4th Cir. 2012) (citing United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011)). "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." Id. at 588 (quoting Wilson v. Arkansas, 514 U.S. 927, 931 (1995)). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id. (quoting Wilson v. Arkansas, 514 U.S. 927, 931 (1995)). Probable cause exists if, given the totality of the circumstances, the officer "had reasonably trustworthy information . . . sufficient to warrant a prudent

[person] in believing that the petitioner had committed or was committing an offense." Id. (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

Here, Smith alleges that he was driving southbound on Route 272 on February 16, 2017 when Cox and Harris pulled him over for no apparent reason. When he stopped the car and asked them why they pulled him over, they offered no reason. Taking those allegations as true, as the Court must at this stage, Cox and Harris had no reason to stop Smith, much less probable cause, as required by the U.S. Supreme Court. Sowards, 690 F.3d at 587–88. In their Declarations, Defendants aver that they were investigating Smith and that "it was known that Mr. Smith had a felony arrest warrant out for his arrest." (Cox. Decl. ¶ 4; Harris Decl. ¶ 4). Officer Defendants attach the warrant to their Reply, but it is still not clear to the Court, especially given the passive wording of the Declarations, that Cox and Harris actually knew about the warrant when they stopped Smith and therefore had probable cause to do so. As a result, the Court concludes that Smith has stated a claim under the Fourth Amendment.

### 2. Heck v. Humphrey

Defendants next argue that Smith's assertions that Cox and Harris did not have probable cause to make the initial traffic stop and that Defendants used excessive force during his arrest are barred by the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477, 487 (1994). The Court evaluates each of Smith's claims in turn.

"Under Maryland law, a conviction determines conclusively the existence of probable cause, regardless of whether the judgment is later reversed in a subsequent proceeding." Ghazzaoui v. Anne Arundel Cty., 659 F.App'x 731, 733–34 (4th Cir. 2016)

(quoting Asuncion v. City of Gaithersburg, No. 95–1159, 1996 WL 1842, at *2 (4th Cir. Jan. 3, 1996) (unpublished)).

> Further, the Supreme Court held in Heck v. Humphrey that
>
>> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.
>
> 512 U.S. 477, 486–87 (1994).

Here, Smith's convictions in the Circuit Court for Cecil County for attempting to elude uniformed police by failing to stop, attempting to elude police in official vehicle by failing to stop, and reckless and negligent driving establish that there was probable cause to stop Smith—but only after he fled from the Officer Defendants in the first instance. None of the crimes for which he was convicted have any bearing on the initial stop. That he was convicted of resisting arrest, for example, does not mean Cox and Harris had reason to believe Smith was committing a crime when they pulled him over earlier. Likewise, that Smith was ultimately convicted for a drug felony does not bear on whether Cox and Harris actually knew about a felony warrant for Smith's arrest at the time of the traffic stop. As discussed above, Cox and Harris offered no reason for the stop when Smith asked. They did not say they had a warrant for his arrest. As a result, Smith's later

convictions with respect to what happened after he was pulled over do not bar his claims under Heck.

As to the claim for excessive force, the Court finds that Heck does not preclude Smith's challenge. The Fourth Circuit has reasoned that if an officer's alleged excessive force caused the arrestee to engage in the conduct underlying his conviction, then a successful § 1983 suit would necessarily imply invalidity of that conviction, since a person cannot be found guilty of resisting arrest if he is simply protecting himself, reasonably, against an officer's unprovoked attack or use of excessive force. Riddick v. Lott, 202 F.App'x 615, 2006 WL 2923905, at *2 (4th Cir. Oct. 12, 2006) (citing State v. Williams, 624 S.E.2d 443, 445–46 (S.C.App. 2005)). If, however, there is no legal nexus between the officer's excessive force and the arrestee's resistance and assault—that is, the alleged force occurred, independently, either before the arrest, or after the arrestee's resistance had clearly ceased, then a successful § 1983 suit for excessive force would not imply invalidity of the conviction. Id. (citing Smith v. City of Hemet, 394 F.3d 689, 697–99 (9th Cir. 2005) (en banc)). In analogous cases, courts have ruled that Heck does not bar § 1983 actions alleging excessive force despite a plaintiff's conviction for resisting arrest because a "state court's finding that [a plaintiff] resisted a lawful arrest . . . may coexist with a finding that the police officers used excessive force to subdue [the plaintiff]." Id. (citing Martinez v. City of Albuquerque, 184 F.3d 1123, 1127 (10th Cir.1999); Nelson v. Jashurek, 109 F.3d 142, 145–46 (3d Cir. 1997); Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995)).

Here, Smith alleges that Boyce commanded the K-9 to repeatedly attack Smith's bare foot even after Smith had been handcuffed and subdued. Smith also alleges that Cox and Harris intentionally took off Smith's right shoe and sock while ordering Boyce to issue that command. As Smith has alleged, the excessive force by Boyce, Cox, and Harris bears no legal nexus to Smith's resistance because the excessive force came <u>after</u> Smith had stopped resisting. <u>See</u> <u>Riddick</u>, 2006 WL 2923905, at *2. Smith's conviction for resisting arrest may coexist with a finding that Cox and Harris's actions and Boyce's command to the K-9 were unprovoked and occurred independently of Smith's previous resistance. Accordingly, <u>Heck</u> does not bar Smith's claim against Cox, Harris, and Boyce for excessive force.

### 3. Eleventh Amendment Immunity

Defendants argue that Smith's claims against MPD and Officer Defendants in their official capacities must be dismissed because they are barred by the Eleventh Amendment. The Court agrees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100–02 (1984). This same protection applies to state agencies and employees acting in their official capacity. <u>Id.</u> at 100.

Here, Smith brings claims for damages against MPD, a state agency, and against Sgt. Harris, Cpl. Cox, Tfc. Boyce, Tfc. Pettit, and Tfc. Hohner in their individual and official capacities. Because Smith's claims against MPD and Officer Defendants in their official capacities are akin to claims against the state itself, those claims must be dismissed.

### 4. Qualified Immunity

Because the Court finds that Smith's claims for an unlawful seizure and for excessive force are not precluded by Heck, the Court will next consider whether Officer Defendants are entitled to qualified immunity.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014). Qualified immunity protects government officials when they have made "mere mistakes in judgment, whether the mistake is one of fact or one of law." Butz v. Economou, 438 U.S. 478, 507 (1978). As "an immunity from suit rather than a mere defense to liability, . . . [qualified immunity] is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis removed). Accordingly, courts should resolve qualified immunity questions prior to discovery or on summary judgment if possible. See Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987).

There is a two-prong test to determine if a government official is protected by qualified immunity: (1) whether the facts that the plaintiff has alleged or shown "make out a violation of a constitutional right"; and (2) whether that right was "clearly established" at the time of the purported violation. Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Courts have discretion to resolve these two prongs in whichever order they deem appropriate, based on the circumstances of the case. Id. at 236. The answers to both prongs must be in the affirmative for a plaintiff to prevail. Batten v. Gomez, 324 F.3d 288, 293–94 (4th Cir. 2003) (considering the issue in the context of a police officer's motion for summary judgment on qualified immunity grounds). Once the defendant raises qualified immunity as a defense, the plaintiff bears the burden of proof on the first prong, that is, to show a constitutional violation occurred. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citing Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993)). The defendant bears the burden on the second prong, that is, to show that the right was not clearly established at the time of the violation. Id. at 378 (quoting Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003)).

The second prong involves a three-step analysis. First, the court identifies "the specific constitutional right allegedly violated." Collinson v. Gott, 895 F.2d 994, 998 (4th Cir. 1990). Second, the court inquires whether at the time of the alleged violation, that right was "clearly established." Id. Third, the court assesses "whether a reasonable person in the official's position would have known that his conduct would violate that right." Id.; see Cloaninger ex rel. Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009)

(explaining that a right is "clearly established" when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" (quoting Saucier, 533 U.S. at 202)). To determine if a right was "clearly established," a district court must first examine "cases of controlling authority" in its jurisdiction," that is, "decisions of the Supreme Court, [the] court of appeals, and the highest court of the state in which the case arose." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538 (4th Cir. 2017) (first quoting Amaechi v. West, 237 F.3d 356, 363 (4th Cir. 2001); then quoting Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004)), cert. denied, 138 S.Ct. 755 (2018)).

Even when a plaintiff proves that an official has violated his rights, the official may nevertheless be entitled to qualified immunity "if a reasonable person in the 'official's position could have failed to appreciate that his conduct would violate' those rights." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991) (quoting Collinson, 895 F.2d at 998). In this way, the qualified immunity standard allows mistakes—"[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Creighton, 483 U.S. at 641). This allowance for mistakes is "ample"—the qualified immunity standard protects "all but the plainly incompetent or those who knowingly violate the law." Id. at 229 (quoting Malley v. Briggs, 475 U.S. 335, 342, 349 (1986) (internal quotation marks omitted)). This allowance "exists because 'officials should not err always on the side of caution' because they fear being sued." Id. (quoting Davis v. Scherer, 468 U.S. 183, 196 (1984)). "If reasonable mistakes were actionable,

difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." Torchinsky, 942 F.2d at 261.

With respect to the traffic stop, Smith has alleged a constitutional violation: a traffic stop without probable cause. It was also clearly established at the time of that alleged violation that a police officer needs probable cause in order to stop a car. See Sowards, 690 F.3d at 587–88. As highway patrol, Officer Defendants reasonably should have known they could not stop a car without probable cause. As a result, at this early stage of the litigation, Officer Defendants are not entitled to qualified immunity with regard to Smith's unlawful seizure claim.

With respect to the excessive force claim, although Smith attempted to evade arrest by fleeing in his car, resisted arrest by struggling with Officer Defendants, and possibly posed an immediate threat to the safety of those officers, that threat had been largely contained by the time Officer Defendants restrained Smith in handcuffs. As Smith alleges, Cox and Harris removed Smith's sock and shoe and Boyce commanded the K-9 to attack Smith's exposed foot only after Smith was face-down on the ground in handcuffs. Smith plausibly pleads Officer Defendants conduct was not reasonable in light of the attendant circumstances and therefore states a claim for excessive force, satisfying the first prong of the qualified immunity analysis.

As for whether the constitutional right was clearly established, Officer Defendants have not cited any law suggesting the violation Smith alleges—that Cox, Harris, and Boyce encouraged the K-9 to attach Smith's foot while he sat restrained in handcuffs—was not clearly established at the time of the incident. Indeed, the Fourth Circuit has held

difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." Torchinsky, 942 F.2d at 261.

With respect to the traffic stop, Smith has alleged a constitutional violation: a traffic stop without probable cause. It was also clearly established at the time of that alleged violation that a police officer needs probable cause in order to stop a car. See Sowards, 690 F.3d at 587–88. As highway patrol, Officer Defendants reasonably should have known they could not stop a car without probable cause. As a result, at this early stage of the litigation, Officer Defendants are not entitled to qualified immunity with regard to Smith's unlawful seizure claim.

With respect to the excessive force claim, although Smith attempted to evade arrest by fleeing in his car, resisted arrest by struggling with Officer Defendants, and possibly posed an immediate threat to the safety of those officers, that threat had been largely contained by the time Officer Defendants restrained Smith in handcuffs. As Smith alleges, Cox and Harris removed Smith's sock and shoe and Boyce commanded the K-9 to attack Smith's exposed foot only after Smith was face-down on the ground in handcuffs. Smith plausibly pleads Officer Defendants conduct was not reasonable in light of the attendant circumstances and therefore states a claim for excessive force, satisfying the first prong of the qualified immunity analysis.

As for whether the constitutional right was clearly established, Officer Defendants have not cited any law suggesting the violation Smith alleges—that Cox, Harris, and Boyce encouraged the K-9 to attach Smith's foot while he sat restrained in handcuffs—was not clearly established at the time of the incident. Indeed, the Fourth Circuit has held

that "officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." Meyers v. Baltimore Cty., 713 F.3d 723, 734 (4th Cir. 2013) (quoting Bailey v. Kennedy, 349 F.3d 731, 744–45 (4th Cir. 2003)). As a result, the constitutional right to be free of excessive force while in handcuffs was clearly established at the time of Smith's arrest. Officer Defendants should have reasonably known their alleged conduct would violate that right. Accordingly, Officer Defendants are not entitled to qualified immunity as to the excessive force claim at this stage of the litigation.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 11) is GRANTED IN PART AND DENIED IN PART. Defendants' Motion is GRANTED as to Smith's claims against MPD and against Officer Defendants in their official capacities. Defendants' Motion is otherwise DENIED. A separate Order follows.

Entered this 30th day of September, 2019.

                                                                                      _____/s/_____
                                                                                  George L. Russell, III
                                                                                  United States District Judge