**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. MARK COULSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
Phone: (410) 962-4953
Fax: (410) 962-4953

May 21, 2021

LETTER TO ALL COUNSEL OF RECORD

Re:         *Smith v. Harris et al*
Civil No.   1:18-cv-02836-GLR

Dear Counsel:

This matter was referred to me for all discovery.  (ECF No. 58).  The parties, by joint letter, alerted the Court to a discovery dispute concerning the scope of Plaintiff's deposition, currently scheduled for June 2, 2021.  (ECF No. 69).  The parties filed their respective position letters.  (ECF Nos. 70; 71).  I find that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons more fully explained below, Plaintiff's Motion for Protective Order is **DENIED.**

Plaintiff Ikiem Smith filed the instant excessive force and failure to intervene action against Defendants, five Maryland State Police Troopers, pursuant to 42 U.S.C. § 1983.  According to Plaintiff, "on February 16, 2017—after a high-speed chase that resulted in [Plaintiff's] arrest— [Defendants] held [Plaintiff] on the ground, facedown with his hands cuffed behind his back, and had a police dog attack him, biting his foot and causing serious injuries."  (ECF No. 70 at 1). Plaintiff now seeks a protective order in advance of his deposition barring Defendants from inquiring into the following areas:

1.      Potentially incriminating facts relating to charged or uncharged instances of drug distribution or other offenses;

2.      Potentially incriminating facts relating to Plaintiff's February 16, 2017 activities prior to the high-speed car chase and subsequent seizure, in connection with which Mr. Smith was arrested and bitten by the police dog.

(ECF No. 70-1 at 1).

Plaintiff's argument principally relies on Federal Rule of Civil Procedure 26(c)(1).  (ECF No. 70 at 2).  Plaintiff contends that there exists "good cause" to "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1)(D).  Requiring Plaintiff "to respond to questions related to possible criminal conduct prior to February 16, 2017, would infringe on his Fifth Amendment right against self-incrimination, as such testimony could serve as a link in a chain of evidence that could be used to prosecute him in state or federal court."  (ECF No. 70 at 2).  Additionally, Plaintiff argues that Defendants "have no need" for Plaintiff's testimony on the contested topics because, in Plaintiff's view, the information does not constitute "'relevant' discoverable evidence."  (ECF No. 70 at 3).

1

Defendants respond that a protective order is not appropriate here; instead, Defendants contend Plaintiff "should be required to invoke his Fifth Amendment privilege on a question-by-question basis." (ECF No. 71 at 1). Under this approach, "[i]f Plaintiff decides to invoke the Fifth Amendment to specific questions, that invocation [will] be placed on the record and Defendants can assess after the deposition whether to seek relief from the Court depending on any specific questions Plaintiff refuses to answer." *Id.* at 2. Moreover, Defendants argue that the proposed protective order would limit "Defendants' inquir[ies] to a small fraction of the overall incident." *Id.*

The instant action is not the first time a § 1983 Plaintiff has sought to invoke his or her Fifth Amendment right against self-incrimination in a civil deposition. However, Plaintiff's request is somewhat unique in that here, Plaintiff's deposition has not yet occurred (and, clearly, Plaintiff has not *yet* invoked his Fifth Amendment right in response to Defendant's specific deposition questions). Other cases in this Circuit embracing this issue arise in the context of summary judgment or motion to compel *after* a Plaintiff invokes his or her Fifth Amendment right.

The Fifth Amendment to the United States Constitution "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). The Fifth Amendment, however, does not permit a § 1983 Plaintiff to invoke his right both "as a shield to oppose depositions," *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991), and as a sword "to gain an unequal advantage against the party he has chosen to sue." *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087 (5th Cir. 1979).

Where a § 1983 Plaintiff invokes his or her Fifth Amendment right against self-incrimination in the response to a question posed in a civil deposition—and Defendant moves to compel Plaintiff's response, or for summary judgment—district courts apply a four-factored balancing test to weigh:

> (1) the validity of the plaintiff's assertion of his Fifth Amendment privilege;
> (2) the costs to the plaintiff associated with compelling him to answer the deposition questions at issue;
> (3) the extent to which upholding his assertion would thwart discovery of issues at the heart of plaintiff's lawsuit; and
> (4) whether and how easily the defendants could obtain the information sought from other sources.

*Swann v. City of Richmond*, 462 F. Supp. 2d 709, 713 (E.D. Va 2006); *see also Deakins v. Pack*, 957 F. Supp. 2d 703, 749 (S.D. W. Va. 2013) ("[A] balancing approach is necessary in cases where a party to a civil action asserts her Fifth Amendment privilege and refuses to answer deposition questions."); *Varner v. Roane*, Civ. No. 5:17-cv-00080, 2018 WL 3244108 (W.D. Va. July 3, 2018) (considering *Swann* factors to fashion evidentiary remedy for Plaintiff's invocation of Fifth Amendment right during his deposition). This Court applied the *Swann* factors in *Brockington v. Boykins*, to determine if the § 1983 Plaintiff's Fifth Amendment invocation would stand, or if a sanction was appropriate. Civ. No. CCB–08–1713, 2013 WL 1326274, at *7 (D. Md. March 29, 2013).

What is clear from *Swann*, *Brockington*, and similar cases that followed, is that this balancing test, which considers the specific facts and circumstances attendant to each question posed to Plaintiff, drives the analysis. In *Swann*, three police officers shot Dwayne Swann, giving rise to the action. 462 F. Supp. 2d at 711. At Swann's deposition, he invoked his Fifth Amendment right against self-incrimination "in response to a number of questions about his alleged drug use" prior to the officer-involved shooting. *Id.* The officers moved to compel Swann's answers to the deposition questions. After surveying the "current state of the law," the *Swann* Court noted that "a balancing approach appears to be warranted in cases, like this one, where a party to a civil action asserts a Fifth Amendment privilege and refuses to answer deposition questions." *Id.* at 713. The analysis that followed considered the specific questions posed to Plaintiff at his deposition, such as, "what time did you take the eight ball?" and "[w]hen was the last time, prior to the incident where you got shot, in terms of hours, minutes, and days, that you last took cocaine?" *Id.* On balance, the *Swann* Court determined that all four factors weighed against "compelling the plaintiff to answer the deposition questions at issue here." *Id.* at 715.

The approach taken in *Brockington* is analytically similar to *Swann*, but reached a different result. In *Brockington*, the § 1983 Plaintiff "refused to answer a question [during his deposition] about what his criminal co-defendant, Tyrone Gross, was retrieving from Brockington's trunk during their encounter with [Defendant] Boykin." *Id.* The Court considered the Fifth Amendment invocation as it related to a single question—what Brockington's co-defendant was reaching for in Plaintiff's truck—and *not* on a broad basis. The Court noted that "Brockington's refusal to answer a question about the circumstances of his encounter with Boykin would unfairly prejudice the defendants," before finding that each of the above factors "weigh[ed] against Brockington's invocation of the privilege." *Id.*

In sum, the *Brockington* Court determined that: (1) Brockington already extensively testified about the events at issue, and Brockington had already been convicted or acquitted of offenses stemming from the questioned events; (2) given the narrow scope of the question posed, Brockington's "cost" of answering it was low; (3) the question appeared directly relevant to Plaintiff's version of events (and, the case revolved around the credibility of the parties' conflicting testimony, making the question significant); and (4) because Brockington's testimony was one of few sources of information about the events at issue, and co-defendant Gross *would* have a Fifth Amendment right were the issue posed to him, Boykins could not obtain the information from another source. *Id.* Therefore, the Court concluded that "Brockington must answer the defendants' question if he wishe[d] to continue to pursue his claims without incurring a sanction." *Id.*

This Court cannot engage in a *Swann* or *Brockington* analysis at this pre-deposition juncture. As one example, the Court cannot determine "the costs to the plaintiff associated with compelling him to answer *the deposition questions at issue*," without knowing the questions at issue. The other factors are similarly difficult to assess without more context.

It is worth noting that Plaintiff cites a different opinion of this Court, also originating in *Brockington*, for the proposition that "[f]ear of criminal prosecution based on deposition testimony may constitute 'good cause' for granting a protective order." (ECF No. 70 at 2) (quoting *Brockington*, Civ. No. CCB–08–1713, 2013 WL 1326274, at *1 (D. Md. May 22, 2013). Plaintiff's reliance is misplaced. While the Court in the May 22, 2013 *Brockington* opinion did, in fact, grant a protective order related to the § 1983 Plaintiff's deposition testimony, it is not the same type of protective order that Plaintiff seeks in this case. There, the Court granted a protective

order to limit "the use and disclosure of [plaintiff's] deposition answers." *Id.*  The Court explicitly noted, however, that "while a protective order may protect Brockington from informal prosecutorial inquiries . . . it will not, as he acknowledges, provide him 'immunity' from prosecution or a shield from a grand jury subpoena." *Id.* at *2.  Here, Plaintiff seeks a broad protective order to preclude Defendants from inquiring into particular areas of questioning, not to limit use of Plaintiff's answers.

To be clear, this Court's decision permits Defendants to gather facts relevant to the events at issue for the purposes of corroborating, or contradicting, Defendants' understanding.  The Court is not pre-ruling on any particular question that Defendants may ask.  However, for the parties' edification in advance of the deposition, questions that inquire into Plaintiff's conduct at earlier times and dates may make invocation of the Fifth Amendment more justified.  The Court trusts that Counsel for Plaintiff will carefully consider each question posed to Plaintiff and make a good faith recommendation to Plaintiff as to whether or not to invoke his constitutional right against self-incrimination, in lieu of a blanket invocation to all of Defendants' questions.  To the extent that it is necessary after the deposition, Defendants may move to compel Plaintiff's responses to unanswered questions.  Then, and only then, will the Court be able to meaningfully weigh the aforementioned factors and determine whether Plaintiff's invocation will be permitted to stand, or if a sanction is warranted.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____
J. Mark Coulson
United States Magistrate Judge